■ In the Matter of the Claim of MILTON DAVID, Respondent, v. FAIRCHILD PUBLICATIONS et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by the employer and its carrier from a decision of the Workmen's Compensation Board making an award for continuing causally related partial disability. The claimant was employed as a smelter of linotype lead for 21 years prior to August 6, 1954. He had first consulted a physician in January, 1953 when he was experiencing flashes before his eyes, dizziness, headaches, mental confusion and loss of consciousness. In August, 1954 he was hospitalized and he responded to treatment for lead poisoning. Dr. Katz, the appellants' consultant, testified at a hearing on July 21, 1955 that his diagnosis was retinitis pigmentosa, osteoarthritis, lues and plumbism. Plumbism is lead poisoning. He stated when he saw the claimant on February 3, 1955 he was totally disabled, partially as a result of the plumbism. A finding of occupational disease was made by the Referee and not contested by the appellants. Thereafter on February 7, 1956 a Dr. Cotter testified that his tests in September, 1955 showed negative findings of blood lead and urine lead but he said there was a partial disability made total by the eye condition which was related to the lead poisoning which the claimant had had, that a person who had had a severe lead encephalopathy should not again expose themselves to fumes or dust of lead. On that date the Referee made a continuing award for partial disability. The claimant's attending physician, Dr. Sciarra, had reported on October 4, 1955 that " the part played by lead intoxication in this man is pretty much at an end ". At a hearing on November 9, 1956 Dr. Wally who had examined the claimant on October 12, 1956 testified that his diagnosis was chronic lead poisoning with lead encephalopathy and peripheral lead neuropathy; lues — late, latent and chorioretinitis which in his opinion were due to the claimant's exposures to lead in his employment. He stated the claimant had a partial disability and that under no circumstances would he recommend return to work requiring exposure to lead smelting. Dr. Reznikoff testified for the carrier that he could not make a diagnosis of lead poisoning nor could he

find any residual of such. He stated the claimant was too weak to do physical work. The Referee again made an award for continuing partial disability. The appellants sought review by the board which referred the case to an impartial specialist, Dr. Cecil. He testified that he could find no evidence of lead poisoning and that the claimant's present conditions were not the result of such even if he had it previously. He did state that he would be better off not returning to the same type of employment. The board found "On the basis of the fact that it would be unhealthful and/or injurious for the claimant to resume work with lead" a 25% disability. The appellants contend that there is no substantial evidence indicating causally related disability after February 8, 1956. There is clearly evidence to support a finding that the claimant originally had lead poisoning but the question here is whether there is any continuing disability from that condition. The medical evidence in this record is to the effect that the claimant's other conditions, i.e., lues, chorioretinitis and osteoarthritis were unrelated to his employment and that he has no residual disability remaining from the lead poisoning. However, Dr. Wally was of the opinion that the claimant's present condition and partial disability was the result of his exposure to lead in his employment. This testimony together with the admissions of other doctors that the claimant should not return to the same employment, should not be exposed to lead fumes or dust and was too weak to work created a question of fact and would seem to be sufficient to support the board's finding of a continuing partial disability. Decision and award unanimously affirmed, with costs to the Workmen's Compensation Board.